## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MIKMAR, INC. and MICHAEL'S INC. DBA
LAMALFA CENTRE AND VINE
BEVERAGE AND CATERERS,

        Plaintiffs,

      v.

WESTFIELD INSURANCE COMPANY,

        Defendant.

Case No.: _____

Removed from the Lake County Court of
Common Pleas, No.: 20CV000646

## DEFENDANT WESTFIELD INSURANCE
## COMPANY'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant, Westfield Insurance Company ("Westfield"), by and through undersigned counsel, hereby removes the above-captioned civil action from the Lake County Court of Common Pleas to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 as described below.  Westfield reserves all defenses and rights available to it, including but not limited to, the right to contest service of process, personal jurisdiction, and to assert all applicable defenses.  In support of its Notice of Removal, and for purposes of removal only, Westfield states as follows:

1.      On May 14, 2020, Plaintiffs MIKMAR, Inc. ("MIKMAR") and Michael's Inc dba LaMalfa Centre and Vine Beverage and Caterers ("LaMalfa," and together with MIKMAR, "Plaintiffs") commenced this action by filing in the Lake County Court of Common Pleas a Class Action Complaint against Westfield, captioned *MIKMAR, Inc., et al. v. Westfield Insurance Company*, Civil Action No. 20CV000646 (the "Complaint").  *See* <u>Exhibit A</u>.

2.      Westfield was served with the Complaint on May 20, 2020.  *See* <u>Exhibit B</u>.

3.      The Complaint asserts claims for declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing against Westfield in connection with Westfield's denial of claims for Business Income, Extra Expense, and Civil Authority coverage under commercial property policies issued to Plaintiffs  Exh. A at ¶¶ 18, 57-88.

4.      In support of their claims, MIKMAR, which operates a hotel, and LaMalfa, which owns and operates an adjoining banquet facility/event space, allege that they submitted claims with Westfield after they lost several hotel guest reservations and catering/banquet events due to the order of the State of Ohio on account of the outbreak of the novel coronavirus, also referred to as COVID-19.  *Id*. at ¶¶ 34-35.

5.      Plaintiffs allege that the prevalence of COVID-19 in Lake County and throughout Ohio makes it "probable that MIKMAR and LaMalfa sustained direct physical loss of or damage to its properties due to the presence of coronavirus, and has unquestionably sustained direct physical loss as the result of the pandemic and/or civil authority orders issued by the Governor of Ohio."  *Id*. at ¶ 37.

6.      The Complaint also sets forth class action allegations and seeks to certify the following classes/sub-classes:

   a.   Declaratory Relief Class (Count I):  All commercial entities engaged in hospitality services including, without limitation, hotel operations and management, and banquet/catering event facility operations and management throughout the United States who, from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Westfield and denied Business Income loss, Extra Expense and/or Civil Authority coverage due to COVID-19.

   b.   Restitution/Monetary Relief Sub-Class (Counts I, II):  All commercial entities engaged in hospitality services including, without limitation, hotel operations and management, and banquet/catering event facility operations and management throughout the United States who from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Westfield and denied Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19.

2

        c. Ohio State Sub-Class for Insurance Bad Faith (Counts I, II, and III): All commercial entities engaged in hospitality services including, without limitation, hotel operations and management, and banquet/catering event facility operations and management throughout the State of Ohio who from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Westfield and denied, in bad faith, Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19.

*Id*. at ¶ 47(a)-(c).

7.     The Complaint alleges that, while Plaintiffs do not know the exact number of the members of the putative classes, Plaintiffs "believe that Class Members number at least in the many thousands and possibly millions and are sufficiently numerous and geographically dispersed throughout the United States of America, and State of Ohio, so that joinder of all Class Members is impracticable." *Id*. at ¶ 50.

8.     The Complaint seeks, on behalf of Plaintiffs and each class member:  declaratory relief, compensatory damages exceeding $25,000, restitution, pre-judgment and post-judgment interest, punitive damages, attorneys' fees and costs, and other, unspecified relief. *Id*. at Prayer for Relief, pp. 22-23.

**I.     JURISDICTION BASED ON CLASS ACTION FAIRNESS ACT, 28 U.S.C. §§ 1332**

9.     Section 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

10.     Under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d) ("CAFA"), federal courts have original jurisdiction over cases filed as class actions involving:  (i) minimal diversity, such that at least one plaintiff and one defendant are citizens of different states; (ii) one hundred or more class members; and (iii) an aggregate amount in controversy of at least

$5,000,000.  *See Roberts v. Marts Petcare US, Inc.*, 874 F.3d 953, 956 (6th Cir. 2017); *see also Am. Gen. Fin. Servs. v. Griffin*, 685 F. Supp. 2d 729, 732 (N.D. Ohio 2010); 28 U.S.C. § 1453(b) (authorizing removal of class actions in accordance with 28 U.S.C. § 1446).

### A.    Plaintiffs Filed This Case as a Class Action

11.    This lawsuit is a putative class action as defined by 28 U.S.C. § 1332(d)(1)(B). CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C § 1332(d)(1)(B).

12.    The Complaint is titled "Plaintiffs' Class Action Complaint" and seeks to certify three putative classes in reliance on Ohio Civil Rule 23—the Ohio equivalent of Federal Rule 23. Exh. A at Caption, ¶¶ 46-56.

### B.    There is Minimal Diversity of Citizenship between the Parties

13.    To satisfy CAFA's minimum diversity requirement, a party removing based under CAFA may demonstrate that "any member of a class of plaintiffs is a citizen of a state different from any Defendant[.]"  28 U.S.C. § 1332(d)(2)(A).

14.    For purposes of jurisdiction, a corporation is a citizen in the state of its incorporation and its principal places of business.  28 U.S.C. § 1332(c)(1).

15.    The Complaint alleges that Westfield is an Ohio Company organized under Ohio law.  Exh. A at ¶ 2.  Thus, Westfield is, and was at all relevant times, a citizen of the state of Ohio.

16.    Although the Complaint does not set forth the citizenship of each of the putative class members, Plaintiffs define the putative Declaratory Relief Class and Restitution Monetary Relief Sub-Class as "nationwide" classes that include class members located "throughout the

United States" and later allege that the class members are "geographically dispersed throughout the United States of America." *Id*. at ¶¶ 47, 47(a)-(b), 50.

17.     In addition, the Complaint alleges that Westfield "sells insurance in Ohio and throughout the country." *Id*. at ¶ 3.

18.     At the time of Plaintiffs' alleged losses, Westfield had issued approximately 4,978 commercial policies containing Business Income insurance coverage of the type at issue in this case to insureds engaged in hospitality services located in 32 states and the District of Columbia, of which 1,238 were engaged in hotel operations/management and banquet/catering event facility operations/management.  *See* Exhibit C (Declaration of Douglas C. Hall) ¶ 3.

19.     In addition, to date, 1,318 claims have been made by Westfield's policyholders seeking Business Income coverage related to COVID-19 on account of losses in approximately 26 different states. *See id*. ¶ 4.

20.     Accordingly, there is minimal diversity of citizenship between at least one plaintiff/putative class member and Westfield, satisfying CAFA's minimal diversity requirement. *See Rosas v. Carnegie Mortg., LLC*, 2012 WL 1865480, at *5 (C.D. Cal. May 21, 2012) ("Because the complaint alleges a 'nationwide class,' . . . minimal diversity necessarily exists."); *see also Dinsdale v. AD Telamerica Inc.*, 2015 WL 1757473, at *3 (N.D. Tex. Apr. 17, 2015) (minimal diversity established for purposes of CAFA where plaintiff alleged that defendant solicited business "throughout the United States").

**C.     The Putative Classes Consist of Greater Than 100 Class Members**

21.     To satisfy CAFA, the number of members of all proposed plaintiff classes must in the aggregate exceed one hundred.  28 U.S.C. § 1332(d)(5)(B).

22.     The Complaint does not set forth the number of putative class members with precision.  Plaintiffs allege, however, that the proposed class or classes "number at least in the many thousands and possibly millions."  Exh. A at ¶ 50.

23.     In addition, as noted above, at the time of Plaintiffs' alleged losses, Westfield issued 4,978 commercial policies containing Business Income insurance coverage of the type at issue in this case to insureds engaged in hospitality services, and has to date received 1,318 Business Income claims related to COVID-19.  *See* Exh. C ¶¶ 3-4.

24.     Accordingly, Plaintiffs' allegations satisfy CAFA's 100-member threshold.

**D.     The Amount-in-Controversy Requirement is Satisfied**

25.     CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  To establish the amount in controversy sufficient to remove a class action case to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met."  *Id*. at 89 (citation omitted).

26.     Courts find it appropriate for a removing defendant to use estimates in order to calculate the amount in controversy for purposes of CAFA.  For example, in *Franklin v. CitiMortgage, Inc.*, 2012 WL 10192 (S.D. Ohio Jan. 3, 2012), the Southern District of Ohio cited with approval cases in which courts accepted defendants' estimates of the amount in controversy and held that "[i]t is not incumbent upon a defendant to establish to a legal certainty that the amount

in controversy exceeds the jurisdictional threshold, but merely to show that it is more likely than not that the damages will exceed that threshold". *Id*. at *4-5.

27.     Likewise, this Court has held that a removing defendant may satisfy its burden to establish the amount in controversy by using "calculation from the complaint's allegations," among other means. *Norris v. People's Credit Co.*, 2013 WL 5442273, at *3 (N.D. Ohio Sept. 27, 2013) (internal quotation and citation omitted).

28.     Here, Plaintiffs seek a monetary award "in excess of $25,000" on behalf of themselves and each class member, in addition to punitive damages, attorney's fees, and declaratory relief. Ex. A at Prayer for Relief, pp. 22-23. Plaintiffs further allege that the class consists of "many thousands and possibly millions" of members. *Id*. at ¶ 50.

29.     Even assuming a class of just 2,000 members—the most conservative estimate based on Plaintiffs' allegation of "many thousands" of class members—and using Plaintiffs' minimum $25,000 compensatory damages claim, the amount in controversy here is at least $50 million, ten times the amount required to establish jurisdiction under CAFA. "Courts routinely rely on such basic multiplication to determine whether the aggregate claims of a putative class likely exceed CAFA's threshold." *Cowit v. CitiMortgage, Inc.*, 2013 WL 142893, at *6 (S.D. Ohio Jan. 11, 2013). This estimate does not even account for punitive damages, attorney's fees, or the value of declaratory relief, all of which may be counted toward the amount in controversy. *See, e.g.*, *Fraley v. State Farm Mut. Auto Ins. Co.*, 2013 WL 4679954, at *2 (N.D. Ohio Aug. 30, 2013); *Karl v. Bizar*, 2009 WL 2175981, at *4-5 (S.D. Ohio Jul. 21, 2009).

30.     Further, it is likely that many of the class members' alleged losses will far exceed the $25,000.00 amount set forth in Plaintiffs' Complaint. For example, Plaintiff MIKMAR has reported lost income in the form of weeks of lost/cancelled hotel bookings, and Plaintiff LaMalfa

has reported lost income in the form of unpaid rent by its banquet facility tenant and lost/cancelled event bookings.  *See* Exh. C ¶¶ 5-6.  These cancellations include the cancellation of public events at the banquet facility for Easter and Mother's Day, which, based on LaMalfa's estimates, resulted in combined lost income of approximately $87,000.00.  *See id*. ¶ 6. Accordingly, Plaintiffs' alleged losses are estimated to be far in excess of $25,000.00.

31.     Accordingly, Westfield submits that Plaintiffs' Complaint satisfies CAFA's $5 million amount-in-controversy threshold.

## II.     PROCEDURAL REQUIREMENTS

32.     Copies of the Complaint, the Lake County Court of Common Pleas docket sheet, and all process, pleadings, orders, and documents filed in the Lake County Court of Common Pleas action are attached hereto pursuant to 28 U.S.C. § 1446(a).  *See* Exhs. A-B.

33.     Removal is timely pursuant to 28 U.S.C. § 1446(b)(3) because Westfield filed this Notice of Removal within 30 days of being served with the Complaint.

34.     The Lake County Court of Common Pleas lies within the Northern District of Ohio. Removal to this district is proper because this Court presides over the county in which the present action is pending.  *See* 28 U.S.C. §§ 1441(a), 1446(a).

35.     Pursuant to 28 U.S.C. § 1446(d), Westfield will promptly serve a copy of this Notice of Removal on counsel for Plaintiffs and will file a copy of this Notice of Removal with the Lake County Court of Common Pleas.

36.     The removal of this action terminates all proceedings in the Lake County Court of Common Pleas.  *See* 28 U.S.C. § 1446(d).

37.    Westfield respectfully requests that this Court proceed with this lawsuit as if it had been originally filed in this Court, and that this Court grant Westfield such other relief to which it is justly entitled.

## III.    RESERVATION OF DEFENSES

38.    Nothing in this Notice of Removal shall be interpreted as a relinquishment of Westfield's right to assert any defense or affirmative matter.

39.    Westfield reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendant Westfield Insurance Company respectfully gives notice that the above-entitled action is removed from the Lake County Court of Common Pleas to the United States District Court for the Northern District of Ohio.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

s/ John J. Haggerty
John J. Haggerty, Esq. (0073572)
2700 Kelly Road, Suite 300
Warrington, PA 18976
Phone:  (215) 345-7500
Facsimile: (215) 345-7507
jhaggerty@foxrothschild.com
*Attorney for Defendant*
*Westfield Insurance Company*

Dated:  June 17, 2020