# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MIKMAR, INC., *et al.*, | ) | Case No. 1:20-CV-01313 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | William H. Baughman, Jr. |
| WESTFIELD INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

During the Covid-19 pandemic, hotels, restaurants, and other hospitality businesses have been particularly hard hit. Between State and local public health directives and consumer reluctance to travel and to dine out, especially in colder weather, many businesses in the hospitality industry have closed. Tragically, too many of these closures will be permanent. Those that have not closed have sustained deep and painful losses. Various governmental relief efforts have attempted to direct aid to those in the hospitality business, among others. This lawsuit presents another means by which some have, understandably, sought a financial lifeline to weather the difficulties and uncertainties in which the hospitality industry finds itself through no fault of its own or any particular actor in it.

Plaintiffs MIKMAR, Inc. and Michael's Inc., doing business as LaMalfa Centre and Vine Beverage and Caterers, operate an adjoining hotel and banquet facility. When they sustained losses due to the pandemic, Plaintiffs filed claims for lost business income under their insurance policies. Defendant Westfield Insurance

Company denied the claims.  That denial prompted this suit, which Plaintiffs bring for their own benefit as well as on behalf of a putative class of other hospitality businesses that own and operate hotels, banquet halls, and catering or event facilities.

Defendant moved to dismiss the complaint or strike the class action allegations.  (ECF No. 4.)  Because the policies at issue do not, as a matter of law, provide coverage for losses sustained due to Covid-19, as more fully explained below, the Court must **GRANT** Defendant's motion to dismiss.  As a result, the Court **DENIES AS MOOT** Defendant's motion to strike the class allegations.

## FACTUAL AND PROCEDURAL BACKGROUND

MIKMAR owns and operates a hotel adjacent to LaMalfa Centre, which operates a high-end banquet and catering business for weddings, fundraisers, and business events.  (ECF No. 1-2, ¶¶ 1–2, PageID #15.)  Although the businesses are separate, they have common ownership.  (*Id.*, ¶ 2 n.2.)  Defendant is a property and casualty insurer, which issued a commercial business insurance policy to Plaintiffs.  (*Id.*, ¶¶ 3, 8 & 9, PageID #15–16.)

Plaintiffs claim they lost business income because of the Covid-19 pandemic and that their insurance policies cover the loss.  (*Id.*, ¶ 14, PageID #17.)  Further, Plaintiffs allege that Defendant wrongly denied their insurance claims.  (*Id.*, ¶ 18, PageID #18.)  On behalf of themselves and putative class members, Plaintiffs allege three claims:  (1) declaratory judgment; (2) breach of contract; and (3) breach of the

2

covenant of good faith and fair dealing (insurance bad faith).  (*Id.*, ¶¶ 57–88, PageID #29–35.)

### A.    The Insurance Policies

Plaintiffs' policies, although not identical, are substantially similar in all relevant respects.  The policies provide coverage for "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (ECF No. 4-3, PageID #110; ECF No. 4-4, PageID #235.)  "Covered Cause of Loss" is defined as "[d]irect physical loss unless the loss is excluded or limited" under the policy.  (ECF No. 4-3, PageID #111; ECF No. 4-4, PageID #224.)  The policies provide "Business Income and Extra Expense" coverage and "Civil Authority" coverage.

### A.1.    Business Income and Extra Expense Coverage

The policies cover the "actual loss of Business Income" sustained "due to the necessary suspension of your 'operations' during the 'period of restoration.'"  (ECF No. 4-3, PageID #115; ECF No. 4-4, PageID #196.)  However, the "suspension must be caused by direct physical loss of or damage to the property" and the "loss or damage must be caused by or result from a Covered Cause of Loss," which also requires direct physical loss.  (*Id.*)  Also, the policies cover "Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to the property at the described premises."  (ECF No. 4-3, PageID #117; ECF No. 4-4, PageID #196.)

Business Income and Extra Expense coverage are both limited by the "period of restoration," which means the time between the "direct physical loss or damage

3

caused by . . . any Covered Cause of Loss" and "the date when the property . . . should be repaired, rebuilt or replaced[.]"  (ECF No. 4-3, PageID #143–44; ECF No. 4-4, PageID #260.)  The end date for the period of restoration under MIKMAR's policy is alternatively the "date when business is resumed at a new permanent location." (ECF No. 4-3, PageID #144.)

### A.2.   Civil Authority Coverage

"When a Covered Cause of Loss causes damage to property other than property at the described premises," the policies also provide coverage.  (ECF No. 4-3, PageID #118; ECF No. 4-4, PageID #197.)   The loss must be "caused by action of civil authority that prohibits access to the described premises" where two conditions are met:

(1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2)   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damages property.

(*Id.*)

### A.3.   Exclusions

The policies identify various exclusions from coverage, five of which the parties discuss.  First, the "ordinance or law" exclusion precludes coverage resulting from the "enforcement of or compliance with any ordinance or law" that "regulat[es] the

4

construction, use or repair of any property." (ECF No. 4-3, PageID #127; ECF No. 4-4, PageID #224.)

Second, the "governmental action" exclusion precludes coverage resulting from the "[s]eizure or destruction of property by order of governmental authority." (ECF No. 4-3, PageID #127; ECF No. 4-4, PageID #225.)

Third, the "acts or decisions" exclusion precludes coverage resulting from "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." (ECF No. 4-3, PageID #132; ECF No. 4-4, PageID #228.)

Fourth, the "loss of use or market" exclusion precludes coverage resulting from "[d]elay, loss of use or loss of market." (ECF No. 4-3, PageID #130; ECF No. 4-4, PageID #226.)

Fifth, the "virus or bacteria" exclusion precludes coverage for "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (ECF No. 4-3, PageID #129; ECF No. 4-4, PageID #209.) Under MIKMAR's policy, where an exclusion applies, the "loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss." (ECF No. 4-3, PageID #127.)

## B.    The Coverage Dispute

Plaintiffs allege they suffered covered insurance losses related to the Covid-19 pandemic and that Defendant wrongly denied their claims and the claims of other policyholders.  For purposes of resolving the parties' coverage dispute, the Court takes

5

the following factual allegations as true and construes them in Plaintiffs' favor at this stage of the proceedings.

Plaintiffs own and operate an adjoining hotel and banquet facility where they provide high-end catering services.  (ECF No. 1-2, ¶¶ 1–2, PageID #15.)  Defendant issued separate insurance policies to each Plaintiff, and the policies were in full force and effect at the relevant times.  (*Id.*, ¶¶ 3, 8–9, 11, PageID #15–17.)  In March 2020, the President of the United States declared the Covid-19 pandemic a national emergency.  (*Id.*, ¶ 25, PageID #19.)  The State of Ohio, and other states, issued mandatory Stay-At-Home Orders that required "businesses, such as Plaintiffs, to shut down and/or significantly suspend business operations, thus causing Plaintiffs a loss of use of its Properties, and resulting in substantial loss of business income." (*Id.*, ¶ 26, PageID #20.)

Plaintiffs allege that the pandemic and closure orders caused "direct physical loss of Plaintiffs' and Class Members' properties."  (*Id.*, ¶ 29.)  Specifically, Plaintiffs lost hotel reservations and catering and banquet events.  (*Id.*, ¶¶ 34–35, PageID #22.) They do not allege with certainty that the virus was present on their properties, but that "[b]ased on the prevalence of the virus . . . it is probable" that the virus caused "direct physical loss of or damage to its properties due to the presence of the coronavirus."  (*Id.*, ¶ 37.)

Plaintiffs allege Westfield denied claims based on an inapplicable "virus/bacteria exclusion" that does not expressly exclude coverage for a pandemic.

6

(*Id.*, ¶ 44, PageID #23.)  Plaintiffs otherwise allege that the coverage and exclusionary language at issue is ambiguous and must be construed against Defendant.  (*Id.*, ¶ 45.)

Based on these allegations, Plaintiffs assert three causes of action:  (1) a declaratory judgment that their policies provide coverage; (2) breach of contract; and (3) insurance bad faith.  (*Id.*, ¶¶ 57–88, PageID #29–35.)  Defendant moves to dismiss all three claims.  (ECF No. 4.)

## GOVERNING LEGAL STANDARD

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted.  *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)).  To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor.

7

*Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).  In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not.  *Iqbal*, 556 U.S. at 628. The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]"  *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## ANALYSIS

Westfield makes three main arguments for dismissal.  First, Defendant maintains Plaintiffs are not entitled to coverage because they have not suffered a Covered Cause of Loss under the policies, which requires direct physical loss or damage.  (ECF No. 4-1, PageID #63–65.)  Second, Plaintiffs' claimed losses also did not trigger Civil Authority Coverage because there was no damage to property other than their own and because access to the covered premises was not completely prohibited as a result of damage to another property.  (*Id.*, PageID #66.)  Third, even if Plaintiffs' losses were covered under the policy, the virus exclusion bars recovery. (*Id.*, PageID #67–69.)

Plaintiffs counter that the policy language is "classically ambiguous" and ask the Court to consider circumstances such as "the parties' relationship, the Policy's purpose, the pandemic's novelty, the experts' testimony, and the insureds' expectation(s)." (ECF No. 31, PageID #1522–23.)  Among other phrases, they claim that "direct physical loss of or damage to property" is an ambiguous term.  (*Id.*) Plaintiffs argue that "physical loss" encompasses loss of use and does not require a

8

material or physical alteration to the property.  (*Id.*, PageID #1526–33.)  Finally, Plaintiffs argue that no exclusion bars coverage.

## I.    "Direct Physical Loss of Or Damage to"  Property

This case turns on the meaning of the language "physical loss of or damage to" property in the insurance policies Defendant wrote and issued.  This is so because Defendant agreed to pay for direct physical loss of or damage to property.  The insurance policies at issue specifically provide:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(ECF No. 4-3, PageID #110.)  Although both policies require physical loss of or damage to property to trigger Business Income and Extra Expense Coverage and Civil Authority Coverage, neither defines physical loss of or damage to property.

When interpreting this contractual language, the Court applies the substantive law of Ohio, which the parties agree governs the insurance policies at issue.  (*See, e.g.*, ECF No. 4-1, PageID #64; ECF No. 31, PageID #1522.)

### I.A.    Ordinary and Plain Meaning

Under Ohio's rules for interpreting contracts and insurance policies, "[t]he court's role in interpreting a contract is to 'give effect to the intent of the parties.'" *Fujitec America, Inc. v. Axis Surplus Ins. Co.*, 458 F. Supp. 3d 736, 743 (S.D. Ohio 2020) (quoting *Goodyear Tire & Rubber Co. v. Lockheed Martin Corp.*, 622 F. App'x 494, 497 (6th Cir. 2015) (citing *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37)).  To that end, "[c]ontract terms are

9

generally to be given their ordinary meaning when the terms are clear on their face," and courts must "apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *Coma Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (citations omitted); *see also PI&I Motor Express, Inc. v. RLI Ins. Co.*, No. 4:19CV1008, 2019 WL 7282098, at *7, 30 (N.D. Ohio Dec. 27, 2019) (collecting Ohio cases).  Courts must also read the insurance policy as a whole, giving meaning to each term and construing the provisions within the context of the entire policy.  *Id.* (citing *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172–73, 436 N.E.2d 1347, 1351 (1982)).

Where the policy language is clear, "[c]ourts may not re-write an insurance [p]olicy." *PI&I,* 2019 WL 7282098, at *10 (citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd*., 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (1992)).  Similarly, where the contract language is unambiguous, courts may not consider evidence beyond the four corners of the contract to interpret its meaning.  *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (citing *Shifrin v. Forest City Enters.*, 64 Ohio St. 3d 635, 638, 597 N.E.2d 499, 501 (1992)).  Courts "presume that words are used for a specific purpose" and "avoid interpretations that render portions meaningless or unnecessary." *Id.* (citing *Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, 888 N.E.2d 1062, ¶ 22).

### I.A.1. "Physical Loss of or Damage to" Property

After repeated and careful study of these background interpretive principles and the policies at issue, the Court determines that the policies are not ambiguous.

The phrase "physical loss of or damage to" property consists of common words that must "be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instruments." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361, 678 N.E.2d 519, 526 (1997)).

"Physical" means "having material existence: perceptible especially through the senses and subject to the laws of nature." *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/physical (last visited Feb. 14, 2021). "Loss" means "destruction, ruin" or "the act of losing possession: deprivation." *Id.*, https://www.merriam-webster.com/dictionary/loss (last visited Feb. 14, 2021). "Damage" means "loss or harm resulting from injury to person, property, or reputation." *Id.*, https://www.merriam-webster.com/dictionary/damage (last visited Feb. 14, 2021).

Taking these words together according to their ordinary meanings, "physical loss of" property means material, perceptible destruction or deprivation of possession. "Physical damage to" property means material, perceptible harm. In other words, the phrase intends a tangible loss of or harm to the insured property, in whole or in part. As the trigger for coverage, this policy language excludes financial or monetary losses resulting from the novel coronavirus, SARS-CoV-2, which occasioned this dispute for the simple reason that the virus did not work any perceptible harm to the

properties at issue, even if (construing the allegations in Plaintiffs' favor) the virus may be found on surfaces there.

### I.A.2  Other Textual Evidence

This result is not manifestly absurd nor do the policies clearly evidence some other meaning when read as a whole.  For example, both policies define a "Period of Restoration," which governs when coverage for property loss or damage begins and ends.  The Period of Restoration ends "on the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality."  (ECF No. 4-3, PageID #144; ECF No. 4-4, PageID #260.)  Reading "direct physical loss of or damage to" property to include loss of intended use, as Plaintiffs urge, would render the Period of Restoration nonsensical or meaningless because no repair, rebuilding, or replacement of the covered property will occur.  Under basic principles of contract interpretation, the Court may not give this language such a reading.  A Period of Restoration ending with repair, rebuilding, or replacement makes sense following and contemplates a material (physical) loss, not a loss of use with no impact to the property's structure.

Some of the exclusions to the definition of "Covered Causes of Loss" further reinforce this reading of the policy language, though not conclusively.  A Covered Cause of Loss excludes losses caused by the "enforcement of or compliance with any ordinance or law . . . regulating the construction, use, or repair of any property."  (ECF No. 4-3, PageID #127; ECF No. 4-4, PageID #224.)  Expressly excluding certain losses due to regulated construction, use, or repair of property ties the insurance to physical

or material events.  And where the loss arises from an ordinance or law—in other words, something non-physical or intangible—the policies do not provide coverage. Similarly, "[d]elay, loss of use or loss of market" are excluded causes of losses, again indicating that the policies require something more than a mere loss of use or intangible trigger for coverage.  (ECF No. 4-3, PageID #130; ECF No. 4-4, PageID #226.)

### I.A.3. Plaintiffs' Counter Readings

Plaintiffs argue that "physical loss of" property means "property deficient or lacking in some quality rendering it unfit for its intended use." (ECF No. 31, PageID #1527.)  But the policies do not protect against the "physical loss of *use* or damage to" property.  And the policies unambiguously mean that losing the intended use of the property, without a material deprivation of or change to the property itself, is not a covered loss.  Adopting Plaintiffs' reading would require the Court to overlook the plain meaning of the phrase or to add words to it.  The Court may not do so.

Also, Plaintiffs insist the terms "physical loss" and "physical damage" must mean something different so that one is not rendered superfluous.  (ECF No. 31, PageID #1527.)  The Court does not disagree, but the outcome is the same.  Plaintiffs were not physically, tangibly, materially deprived of their property, and therefore did not suffer a "physical loss."  Nor did they sustain material or physical harm from injury to their property that constitutes "physical damage."  In making this argument, Plaintiffs rely on cases that do not reflect Ohio law and involved properties that were stolen, *Nautilus Group, Inc. v. Allianz Glob. Risks US*, No. C11-5281BHS,

2012 WL 760940, at *7 (W.D. Wash. Mar. 8. 2012), or temporarily unrecoverable while in another's possession, *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of America*, No. CV 17-04908 AB (KSx), 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018), neither of which is the case here. (ECF No. 31, PageID #1528.)

Plaintiffs plausibly allege that governmental shutdown orders and the possible presence of the coronavirus itself interfered with their intended use of the properties as a hotel and banquet facility. Even so, Plaintiffs' property was not materially or perceptibly destroyed, ruined, or harmed, and they remain in possession of it. For these reasons, their alleged loss falls outside the plain meaning of "direct physical loss of or damage to" the property. Accordingly, Plaintiffs have not suffered a Covered Cause of Loss.

### I.B.   Ohio Case Law

When exercising diversity jurisdiction, the Court applies Ohio substantive law according to the decisions of the Ohio Supreme Court. *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020). Where the Ohio Supreme Court has not spoken on an issue, the Court must "look to the decisions of [Ohio's] lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue." *Id.* If Ohio courts do not provide a clear answer on the relevant issue, the Court must "turn to Ohio's general rules of contract interpretation and insurance law." *Id.*

Here, the Ohio Supreme Court has not defined "physical loss of or damage to" property. Therefore, the Court "look[s] to the decisions of [Ohio's] lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the

14

issue." *Id.* (citations omitted).  A few Ohio appellate court decisions shed some light on how the State's highest court would likely interpret the phrase.  Although merely persuasive, the lower Ohio court decisions bolster the conclusion that "physical loss" and "physical damage" do not include loss of intended use.

Most notably, the Ohio Court of Appeals has ruled that the plain meaning of "physical injury" as applied to real property requires "harm to the property that adversely affects the structural integrity" of the property.  *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶ 61 (8th Dist.).  In *Mastellone*, Ohio's Eighth District Court of Appeals held that mold that stained the exterior of a house did not constitute physical injury.  *Id.* at ¶ 68. *Mastellone* has limitations that Plaintiffs point out.  For example, the decision involves homeowner's insurance, not a business interruption policy.  Nor does the decision provide key terms and provisions of the policy.  Beyond that, Plaintiffs attempt to distinguish the case in various ways, such as the location of the mold at issue, which the Court finds unpersuasive.  Despite its limitations, and Plaintiffs' arguments notwithstanding, *Mastellone* suggests that Ohio courts understand that physical injury in an insurance policy requires actual harm to a structure, not superficial or intangible effects.  Accordingly, *Mastellone* has some persuasive authority consistent with the plain meaning of the parties' insurance contract.

The Sixth Circuit relied in part on the *Mastellone* Court's definition of physical injury to conclude that a "physical loss" encompasses "tangible, physical losses, but [not] economic losses."  *Universal Image Prods. v. Federal Ins. Co.*, 475 F. App'x 569,

573 (6th Cir. 2012) (interpreting Michigan law). There, the Sixth Circuit reasoned that "physical loss" might occur "when real property becomes uninhabitable or substantially unusable." *Id.* at 574 (citations and quotations omitted). For this reason, the court affirmed summary judgment in favor of an insurer on the insured's claim for cleaning and moving expenses resulting from mold contamination where there was no proof the plaintiff was "unable to remain" in the building during remediation. *Id.* Here, notwithstanding Plaintiffs' "inability to fully rent its hotel units and book catering events" (ECF No. 1-2, ¶ 14, PageID #17), Plaintiffs' property has not been rendered uninhabitable or substantially unusable. In this way, the Sixth Circuit's understanding of *Mastellone* aligns with the plain meaning of the policy language, to which Ohio law gives effect.

Additionally, Plaintiffs rely on *Polk v. Landings of Walden Condominium Association*, 11th Dist. Portage No. 2004-P-0075, 2005-Ohio-4042, 2005 WL 1862126, at ¶ 79, to argue that Ohio law defines physical loss to include property rendered deficient for its intended use. (ECF No. 31, PageID #1527.) But that case makes clear that the court defined the term "loss" without the modifier "physical." *Polk*, 2005-Ohio-4042, at ¶ 79. Further, the loss to which *Polk* refers is the event triggering the claim. For these reasons, the case fails to offer Plaintiffs any support for their interpretation of the contracts at issue.

Nor does a recent ruling of an Ohio trial court in Hamilton County. In *Queens Tower Restaurant Inc. v. Cincinnati Financial Corp.*, Hamilton C.P. No. A 2001747 (Jan. 7, 2021), an insurance company denied coverage under a business interruption

16

policy for a claim relating to the pandemic, even though the policy at issue did not contain a virus exclusion.  The insurer moved to dismiss claims the plaintiff brought on its own behalf and those similarly situated.  The trial court denied a motion to dismiss on the basis that the coverage determination is a question of fact.  In its entirety, the trial court reasoned as follows: "The Court finds that whether Covid-19 and/or Ohio's orders caused property damage is a question of fact.  As such, a reasonable jury could find that [the plaintiff] was entitled to coverage." (ECF No. 37-1, PageID #1786.)  Aside from the ruling's conclusory analysis, "[a]n insurance policy is a contract whose interpretation is a matter of law." *Sharonville v. American Emps. Ins. Co.*, 109 Ohio St. 3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6 (2006) (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus).  Accordingly, this decision has little value on the question before the Court.

Nor does *Sylvester & Sylvester, Inc. v. State Automobile Mutual Insurance Co.*, Stark C.P. No. 2020 CV 00817 (Jan. 7, 2021) (ECF No. 40-2), on which Plaintiffs rely.  In that case, the court rested its ruling on an endorsement for food-borne illnesses not at issue in this case, or any others on which the parties rely to advance their respective positions.  (*See* ECF No. 40-2, PageID #1838.)

Finally, Plaintiffs cite numerous cases from outside Ohio apparently holding that "direct physical loss of or damage to property" includes loss of use and does not require "structural alteration of the property."  (ECF No. 31, PageID #1529–30.)

17

Because these cases do not directly speak to interpretation of the phrase under Ohio law, they have no impact on the Court's decision.

*    *    *

On balance, the Ohio cases support giving effect to the interpretation of the plain language of the term "physical loss of or damage to" property left undefined in the policies.  Although the persuasive value of these lower-court opinions leaves room for debate, the Sixth Circuit has relied on them to interpret language in an insurance contract (from Michigan) consistent with the meaning clear from the plain language of the policies.  Certainly, these cases offer no reason to deviate from it.

### I.C.  Ambiguity

Because Ohio courts do not provide a definitive meaning for the language at issue, Plaintiffs "turn to Ohio's general rules of contract interpretation and insurance law" for support.  *Perry*, 953 F.3d at 421.  Specifically, Plaintiffs are left to argue that the parties' contracts are "classically ambiguous."  (ECF No. 31, PageID #1522.)  They do so to argue for construction of the insurance policy against the insurer.  *Perry*, 953 F.3d at 421 (citing *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547, 549–50, 757 N.E.2d 329, 332–33 (2001)).

Ambiguity means the contract language "cannot be determined from the four corners of the agreement" or "the language is susceptible of two or more reasonable interpretations."  *Coma Ins. Agency* 526 F. App'x at 468 (citing *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 45, 55, 716 N.E.2d 1201, 1208 (2d Dist. 1998)).  A contract is not ambiguous merely because the parties disagree

18

over its meaning. *Tattletale Portable Alarm Sys. v. MAF Prods.*, No. 2:14-cv-00574, 2016 WL 5122545, at *6 (S.D. Ohio Sep. 21, 2016) (citing *Shifrin*, 64 Ohio St. 3d at 637–38, 597 N.E.2d at 501). Significantly, Ohio law does not treat a phrase as ambiguous simply because it is not defined in the relevant policy. *Penton Media, Inc. v. Affiliated FM Ins. Co.*, No. 1:03 CV 2111, 2006 WL 2504907, at *7 (N.D. Ohio Aug. 28, 2006) (citing *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St. 3d 270, 719 N.E.2d 955, 959 (1999)).

Courts will construe insurance policies against the insurer only if the policy language is ambiguous. *Perry*, 953 F.3d at 421. As already explained, the ordinary and plain meaning of the phrase "physical loss of or damage to" property requires a tangible, material destruction or deprivation of possession. Moreover, Plaintiffs undercut any claims of ambiguity by directing the Court to persuasive Ohio law that defines "physical loss" to mean "material deprivation." (ECF No. 31, PageID #1527.) From there, Plaintiffs extrapolate that "material deprivation" includes property rendered "unfit for its intended use." (ECF No. 31, PageID #1527.) But their conjecture does not square with the Ohio law on which they rely.

In addition to *Polk*, Plaintiffs cite *Downwyn Farms v. Ohio Insurance Guaranty Association*, 9th Dist. Lorain No. 89CA004593, 1990 WL 7991, at *3 (Ohio Ct. App. Jan. 30, 1990). There, an Ohio appellate court concluded that a farmer was "materially deprived" of personal property where the farm lost the farmer's colt for over one year after the farmer delivered the colt for foaling. *Id.* at *4. Here, Plaintiffs have not been physically deprived of their property. The complaint does not allege

19

that the virus or government orders caused any material deprivation of the properties. Plaintiffs still possess it. Their properties exist in the same state as they did before the pandemic. The farmer in *Downwyn Farms* could not ride, brush, feed, or otherwise use his colt in any way while it was lost. He was, according to the court, "materially deprived" of his property. *Id.* at *4. Plaintiffs, in contrast, were not deprived of their property in the same way as the farmer. They did not lose the ability to use their property at all, but only their ability to use the property in the way they wished to use it. In Plaintiffs' own words, they were deprived "from making full use of the Property[.]" (ECF No. 1-2, PageID #17.) While the policy may cover a "material deprivation," Plaintiff's interpretation of "material deprivation" to include loss of the ability to make "full use" of their property exceeds the bounds of the ordinary and plain meaning of those words on their terms and as the *Mastellone* and *Downwyn* Courts define them.

## II. Civil Authority Coverage

"When a Covered Cause of Loss causes damage to property other than property at the described premises," the policies provide coverage for lost business income due to the action of civil authorities that prohibits access to the premises. (ECF No. 4-3, PageID #118; ECF No. 4-4, PageID #197.) Specifically, the policies provide:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises[.]

(*Id.*) Two additional conditions must also apply for this coverage to kick in. (*Id.*)

20

Under the policies, a Covered Causes of Loss means "[d]irect physical loss," subject to certain exclusions or limitations.  (ECF No. 4-3, PageID #111; ECF No. 4-4, PageID #224.)  In this way, the availability of the coverage under the civil authority provisions turns on the meaning of the undefined term "direct physical loss" already discussed.  Because the ordinary and plain meaning of that term does not apply to the conditions Covid-19 and the governmental responses to it brought about, the insurance policies do not, as a matter of law, provide coverage.

Two additional points reinforce this conclusion and confirm the unavailability of coverage under the civil authority provision of the policies.  First, the conditions for this coverage provide additional evidence that the polices cover material, physical, tangible damage to property.  For example, the first condition applies only when civil authorities limit access to the area around "damaged property," and the second requires a response of civil authorities to "dangerous physical conditions."  (*Id*.)  The policy language of these conditions provides additional evidence that the policies only cover material, physical losses.  Second, Plaintiffs do not allege damage to "property other than property at the described premises."  (ECF No. 4-3, PageID #118; ECF No. 4-4, PageID #197.)  Finally, Plaintiffs have not alleged they were "prohibited" from accessing their property, but only that the virus and government orders have limited their use of the property.  For all these reasons, Plaintiffs are not entitled to coverage under the civil authority provisions of the policies.

### III.    Virus Exclusion

Even if the policies otherwise provided coverage, they contain a virus exclusion the meaning and application of which the parties dispute.  Specifically, the policies exclude coverage for any loss or damage, directly or indirectly, from "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (ECF No. 4-3, PageID #129; ECF No. 4-4, PageID #209.)  On its face, this language excludes coverage for the lost use of their property Plaintiffs claim.  Without question, SARS-CoV-2 is a "virus . . . that induces or is capable of inducing physical distress, illness or disease."  That is a matter of common knowledge, pled in the complaint, and the rationale for the governmental orders and consumer behavior that occasioned much of the lost income prompting this suit.  (ECF No. 1-2, ¶¶ 19, 20 & 22, PageID #18–19.)

Reading this language, Plaintiffs contend it is ambiguous because a virus on their properties did not cause illness or disease.  But this reading adds words to the exclusion that do not appear in the contract.  Nor is the language, in the Court's view, ambiguous.  Recently, an Ohio trial court in Franklin County read similar language in a different policy as excluding coverage for losses claimed for Covid-19 shutdowns and lost business income.  *Eye Specialists of Delaware v. Harleysville Worchester Ins. Co.*, Franklin C.P. No. 20-cv-6386 (Feb. 1, 2021); *see also* ECF No. 38-1, PageID #1808.  For the foregoing reasons, the virus exclusion bars coverage in any event.

To the extent Plaintiffs argue that governmental orders caused their loss unrelated to the virus, that is not what they allege.  The complaint directly links the

government orders to the virus:  "Coronavirus and the pandemic cause[d] direct physical loss and property damages. . . . .  The executive orders issued by the Governor of Ohio, and the majority of other State Governors, in response to the pandemic, have caused direct physical loss of Plaintiffs' and Class Members' properties."  (ECF No. 1-2, ¶ 29, PageID #20.)  Moreover, even assuming the government orders alone caused Plaintiffs' loss, the policies exclude coverage resulting from the "[s]eizure or destruction of property by order of governmental authority" (ECF No. 4-3, PageID #127; ECF No. 4-4, PageID #225), and from "[a]cts or decisions, including the failure to act or decide, of any . . . governmental body" (ECF No. 4-3, PageID #132; ECF No. 4-4, PageID #228).

Even if Plaintiffs are correct that their claimed losses arise from governmental action and not the virus itself, the virus exclusion in MIKMAR's policy applies to loss or damage caused "directly or indirectly" by a virus.  (ECF No. 4-3, PageID #127.) This policy language sweeps aside the causation question Plaintiffs raise to try to avoid application of the exclusion's plain language.  (ECF No. 31, PageID #1525.)  Put another way, Plaintiffs argue that the exclusion only applies where a virus alone causes a loss.  But the reach of the exclusion to losses a virus indirectly causes does not require parsing the causal chain legally and obviates the need for factual development.  To the extent there is any doubt on the matter, MIKMAR's policy applies the exclusion "regardless of any other cause or event that contributed concurrently or in any sequence to the loss."  (ECF No. 4-3, PageID #127.)  Also, Plaintiffs argue that the virus exclusion only applies where the virus causes an illness

23

at the insured's property.  No language in the exclusion of either policy says that. Further, this argument runs headlong into the language of the exclusion, which applies where a virus "is capable" of producing adverse health effects, showing that the exclusion does not depend on a patron's or employee's actual symptoms or illness.

For these reasons, Defendant has carried its burden of showing that the losses Plaintiffs allege fall squarely within the policy language of the virus exclusion.  In the Court's view, the language of the exclusion is plain and unambiguous and covers the losses Plaintiffs allege.

## IV.    Supplemental Authorities

After the close of briefing, the parties submitted various supplemental authorities.  Three from other Judges in this Court merit some brief discussion.

### IV.A.  *Santo's Italian Café*

In *Santo's Italian Café LLC v. Acuity Insurance Co.*, No. 1:20-cv-01192, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020), Judge Barker dismissed the claims of a restaurant owner for coverage of losses due to Covid-19 under its business interruption insurance policy.  That case, like this one, principally turned on the meaning of the phrase "direct physical loss of or damage to property."  In determining that the policy did not provide coverage, the *Santo's* Court exhaustively reviewed Ohio insurance law in conjunction with its reading of the policy language.  *Id.* at *6–12.  That analysis supports the result the Court reaches in this case.

24

### IV.B. *Henderson Road Restaurant Systems*

Plaintiffs rely on *Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.*, No. 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021). (*See* ECF No. 35.)  There, Judge Polster granted summary judgment to the insureds, owners and operators of restaurants who brought breach of contract and declaratory judgment claims following denial of insurance coverage relating to losses sustained as a result of the Covid-19 pandemic.

As here, the core issue in *Henderson Road* involves the meaning of the phrase "direct physical loss of or damage to property" in the insurance policies.  Finding this language ambiguous, the *Henderson Road* Court construed it against the insurer. 2021 WL 168422, at *10.  Further, the court disagreed with the *Santo's* Court's reading of how Ohio courts would interpret and apply this language.  *Id.* at *10–11. After careful review of the plain and ordinary meaning of the policy language at issue in this case, the Court is not persuaded by the reasoning in *Henderson Road* or that decision's determination that the policy language at issue is ambiguous.

Additionally, reading the policies as the *Henderson Road* Court does creates a host of potential practical and legal problems.  For example, if insurance covers a loss for which the insured also receives governmental assistance through one of the many federal or State Covid relief programs, has the insured received a double recovery, or does the insurer have a subrogation interest?  This is not an idle consideration. Indeed, the *Henderson Road* Court recognized that property may be lost, triggering coverage, then later returned to use or restored.  *Id.* at *12.  If the policy language

dictates such a result, so be it. But the potential follow-on issues and disputes advise caution. Because, in the Court's view, the policy language here determines the availability of coverage, these sorts of considerations ultimately play no role in the Court's decision.

One difference between the policy in *Henderson Road* and the policies here involves the virus exclusion. There, the exclusion pertained only to microorganisms. *Id.* at *14. Although the parties there debated whether a virus counts as a microorganism, that issue does not arise in this case because the policies here expressly exclude coverage for loss arising, directly or indirectly, from a virus. (ECF No. 4-3, PageID #129; ECF No. 4-4, PageID #209.)

Based on *Henderson Road*, one Ohio trial court recently concluded that a Westfield policy containing the phrase "direct physical loss or damage to property" was ambiguous. *See McKinley Dev. Leasing Co. v. Westfield Ins. Co.*, Stark C.P. No. 2020 CV 00815 (Feb. 9, 2021) (ECF No. 40-1.) There, the court agreed that "[b]oth sides provided reasonable interpretations of the policy language." (ECF No. 40-1, PageID #1826.) For that reason, the court thought the policy was ambiguous and construed the language against the insurer. (*Id.*) The court did the same with respect to the virus exclusion. (*Id.*, PageID #1829.) But under Ohio law, a phrase is not ambiguous simply because the parties disagree over its meaning or offer reasonable, competing interpretations. *Tattletale Portable Alarm Sys.*, 2016 WL 5122545, at *6 (citing *Shifrin*, 64 Ohio St. 3d at 637–38, 597 N.E.2d at 501). For this reason, the

26

Court regards *McKinley Development Leasing* as resting on legal error and discounts its weight as persuasive authority accordingly.

In one important respect, the Court does agree with the *Henderson Road* Court:  what matters in interpreting the insurance policies at issue is not picking and choosing among competing persuasive authorities or simply counting their numbers. Instead, "the Court must look to the plain meaning of the words, not persuasive authority from other courts." *Id.* at *12.  Although the Court reaches a different result than *Henderson Road*, the language of Plaintiffs' policies compels that result.

### IV.C. *Neuro-Communication Services*

In *Neuro-Communication Services, Inc. v. Cincinnati Insurance Company*, Case No. 4:20-cv-01275 (N.D. Ohio Jan. 19, 2021), Judge Pearson certified a question similar to the dispositive one in this case to the Ohio Supreme Court for review. There, the plaintiff filed suit on its behalf and a nationwide class of insureds with similar policies who were denied coverage for losses relating to the pandemic.  The policy at issue covers "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."  (Case No. 4:20-cv-01275, ECF No. 43, PageID #1008.)  The specific question certified to the Ohio Supreme Court is:

> Does the general presence in the community, or on surfaces at a premises, of the novel coronavirus known as SARS-CoV-2, constitute direct physical loss or damage to property; or does the presence on a premises of a person infected with COVID-19 constitute direct physical loss or damage to property at that premises?

(*Id.*)

Although the policy language at issue in *Neuro-Communication Services* differs from that in this case, the question certified does not. The Court declines to certify the question here because no party in this matter has requested it to do so. Additionally, because Judge Pearson already certified the question, there is no need to do so again or to wait many months for the resolution of this dispute to see whether the Ohio Supreme Court will weigh in on the matter.

## V.  Plaintiffs' Claims

Plaintiffs assert three claims for relief: declaratory judgment (Count I); breach of contract (Count II); and insurance bad faith (Count III). Based on the foregoing analysis and discussion, the plain language of the policies precludes relief on each claim as a matter of law. No amount of discovery can change that conclusion.

### V.A.  Declaratory Relief

No cognizable legal theory or set of facts would allow the Court to provide declaratory relief. To prevail on a declaratory-judgment claim in Ohio, a plaintiff must show three elements: "(1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 31. The Court cannot award Plaintiffs the declaratory relief they seek where they have failed to allege a Covered Cause of Loss according to the plain language of the policies. Accordingly, the Court dismisses Count I.

28

### V.B.   Breach of Contract

"To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach."  *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 2018-Ohio-2602, 104 N.E.3d 1076, ¶ 28 (10th Dist.)).  Under the policies, reading the words in context according to their usual and ordinary meaning, Defendant did not breach the contracts by denying coverage for Plaintiffs' claimed losses because the claimed losses do not trigger coverage under the policies. Therefore, the Court dismisses Count II of Plaintiffs' complaint.

### V.C.   Insurance Bad Faith

As discussed, the policies do not provide coverage for Plaintiff's claimed losses. Accordingly, Defendant's denial of coverage was reasonable, necessitating dismissal of Plaintiffs' bad faith claim.  *Cleveland Freightliner, Inc. v. Federated Serv. Ins. Co.*, No. 1:09CV1108, 2010 WL 395626, at *13 (N.D. Ohio Jan. 26, 2010) ("Ohio law clearly states if denial of coverage is appropriate there is no bad faith.") (citing *Hahn's Elec. Co. v. Cochran*, 10th Dist. Franklin No. 01AP-1391, 01AP-1394, 2002-Ohio-5009, ¶ 42); *Pasco v. State Auto. Mut. Ins. Co.*, 10th Dist. Franklin No. 99AP-430, 1999 WL 1221633, at *6 (Dec. 21, 1999) ("If a reason for coverage denial is correct, it is per se reasonable." (quotation and citation omitted)).  Because Defendant acted appropriately by denying coverage, the Court dismisses Plaintiffs' claim for insurance bad faith.

29

## CONCLUSION

In this ruling, the Court does not intend in any way to dismiss or minimize the pain or difficulties those in the hospitality business have endured since the outbreak of the pandemic.  But the question before the Court is a narrow one, limited to interpretation of language in Plaintiffs' insurance policies.  For all the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss for failure to state a claim on which the Court may grant relief.  (ECF No. 4.)  This disposition leaves a handful of loose ends.  As part of its motion to dismiss, Defendant moved to strike the class allegations.  (ECF No. 4.)  That part of the motion is now moot.  So is Plaintiffs' motion to extend discovery, because discovery is no longer necessary.  (ECF No. 27.)  The Court **DENIES** each of these motions as moot.

Finally, Defendant asserted one counterclaim against each Plaintiff seeking a declaration that its policies do not cover the claims Plaintiffs submitted.  (ECF No. 11, PageID #487–90.)  Plaintiffs answered the counterclaim.  (ECF No. 16.)  In its motion for summary judgment, Defendant sought judgment on Plaintiffs' claims as well as judgment in its favor on its counterclaims.  (ECF No. 29, PageID #1093; ECF No. 29-1, PageID #1105, 1118 & 1119.)  Under the Court's Case Management Order, the deadline for a response to the motion for summary judgment on the counterclaims was November 30, 2020.  (ECF No. 22, PageID #1039.)  To the extent Defendant seeks summary judgment on Plaintiffs' claims, the Court **DENIES** that motion as moot in light of dismissal of Plaintiffs' claims under Rule 12(b)(6).  Because the coverage issues regarding Defendant's counterclaims mirror those of Plaintiffs' claims, and

because Plaintiffs did not respond to Defendant's motion for summary judgment, the Court **GRANTS** summary judgment in favor of Defendant on its counterclaims.  For the reasons explained above, Defendant is entitled to judgment as a matter of law on its counterclaims seeking a declaration that it has no coverage obligation to Plaintiffs under the policies on the facts alleged.

**SO ORDERED.**

Dated:  February 17, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio